UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARA-JUDITH YARBROUGH,<br><br>                              Plaintiff,<br><br>              -against-<br><br>BRAGG ET AL.,<br><br>                              Defendants. | 25-cv-159 (DEH)<br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

On January 8, 2025, Plaintiff Sara-Judith Yarbrough ("Plaintiff" or "Ms. Yarbrough"), proceeding *pro se*, filed this action alleging that Defendants failed to uphold their constitutional and fiduciary duties to protect the United States and New York Constitutions by allowing the New York State criminal prosecution of President Donald J. Trump (the "Trump Criminal Action") to proceed.[1]  Defendants are New York State Attorney General Letitia James, New York State Governor Kathy Hochul, Denis Reo (Chief of Staff to New York State Deputy Chief Administrative Judge Adam Silvera), and Hon. Suzanne J. Adams (Administrative Judge for the New York County Supreme Court, Civil Division) (collectively, "State Defendants"), as well as New York Supreme Court Justice Juan Merchan and Alvin Bragg (District Attorney of New York) (collectively, "Defendants").[2]  Before the Court are Defendants' separate Motions to Dismiss Ms. Yarbrough's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3]  For

---

[1] *See* Compl., ECF No. 1.  Ms. Yarbrough's Complaint is written in narrative format, and the separate paragraphs are not numbered.  *See id.*  As a result, this opinion cites to the applicable page number throughout, unless otherwise stated.

[2] *Id*.

[3] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from

the reasons that follow, Defendants' Motions to Dismiss are **GRANTED** with prejudice.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the Complaint and presumed to be true solely for purposes of adjudicating Defendants' Motions to Dismiss.[4] Because Ms. Yarbrough proceeds *pro se*, her submissions are construed liberally to raise the strongest arguments that they suggest.[5]

In her Complaint, Ms. Yarbrough alleges she was "unlawfully evicted" from her home and subsequently filed a Petition for an Order to Show Cause ("OSC") and a Temporary Restraining Order ("TRO") to "recover" the home.[6] However, the "assigned judge"[7] allegedly "failed to act, refusing to sign the OSC or TRO."[8] Ms. Yarbrough alleges that she made "multiple inquiries to the Clerk of the Court" about the OSC and TRO but that the "petition was reported as missing" and, after "sending a direct letter to the judge," he indicated that "he would not sign [the] petition

---

cases, citations, footnotes, brackets, ellipses, and emphases are omitted unless otherwise indicated. *See* Def. Merchan's Mot. to Dismiss, ECF No. 67; Def. Bragg's Mot. to Dismiss, ECF No. 70; State Defs.' Mot. to Dismiss, ECF No. 72. Alvin Bragg's Motion to Dismiss was first filed on May 22, 2025, *see* ECF No. 70. However, the Clerk of Court flagged the filing as deficient, and Defendant Bragg subsequently re-filed the motion. *See* ECF No. 78.

[4] *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) ("We . . . 'construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'").

[5] *See Saeli v. Chautauqua County*, 36 F.4th 445, 457 (2d Cir. 2022) ("It is . . . 'well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest'") (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

[6] Compl. at 5.

[7] *Id*.

[8] *Id.*

and the case was closed."[9]  "As a result," Ms. Yarbrough says that she "lost all [her] personal property left in the house" and was "forc[ed] . . . into homelessness," causing her "profound emotional distress."[10]  After "recovering from the depression," she then "filed a Lis Pendens to prevent the new owner from disposing of the property," which "has yet to be addressed."[11] She also "filed a formal complaint with the New York State Commission on Judicial Conduct against the judge who refused to act."[12]  Construed broadly, Ms. Yarbrough appears to allege that her eviction and these ensuring events constitute a denial of "due process" which she says reflects "systemic judicial malfeasance and a deliberate failure to uphold procedural fairness and equal protection under the law" on the part of the "judicial officials" whom she alleges were involved.[13]

According to Ms. Yarbrough,"[t]he systemic judicial failures that have harmed [her] are not isolated incidents but part of a broader pattern" and that "[t]he same system that violated [her] inherent rights is now being weaponized against Mr. Donald J. Trump."[14]  While Ms. Yarbrough's allegations are largely conclusory and unclear, she appears to broadly assert that, in allowing the Trump Criminal Action to proceed, Defendants "demonstrated flagrant disregard for their fiduciary duties" and that "[t]hrough their personal biases, abuses of power, and failures to act, they have not only violated the rights of Mr. Trump and [Ms. Yarbrough herself] but have also betrayed The People of New York and the nation as a whole."[15]

---

[9] *Id.* at 5-6.

[10] *Id.* at 5-6.

[11] *Id.* at 6.

[12] *Id.*

[13] *Id.* at 5-6.

[14] *Id.* at 8.

[15] *Id.* at 25-26.

As for her requested relief, Ms. Yarbrough asks this Court to, *inter alia*, (1) "restrain the Defendants from continuing actions outside the scope of their jurisdictional authority . . . [to] prevent further violations of Mr. Trump's constitutional rights" (2) "to compel the Defendants to justify the authority under which they have acted . . . including the initiation and oversight of judicial and prosecutorial processes," (3) "to declare the actions of the Defendants unconstitutional under the Fourteenth Amendment," (4) to "mandate systemic reforms to restore constitutional governance," and (5) "to establish a clear precedent holding public officials accountable to their oaths and fiduciary duties."[16]

## II.    Procedural Background

On January 8, 2025, Ms. Yarbrough filed a complaint initiating this action.[17]  That same day, she also asked this Court for an emergency TRO and a preliminary injunction "to immediately halt the sentencing of President-elect Donald J. Trump."[18]  By Order dated January 10, 2025, this Court denied Ms. Yarbrough's request for a TRO and preliminary injunction, concluding that her "submissions d[id] not demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor."[19]

Ms. Yarbrough proceeded to file numerous documents, one of which the Court interpreted as a request for leave to amend her operative complaint and extend Defendants' deadline to answer or move to dismiss the amended complaint.[20]  Even construing Ms. Yarbrough's other filings

---

[16] Compl. at 22-24.

[17] Compl. at 1.

[18] Compl. at 23.

[19] Jan. 10, 2025 Order, ECF No. 12.

[20] *See* March 27, 2025 Order at 1, ECF No. 40.

liberally, this Court was unable to discern any request for relief to which Ms. Yarbrough was entitled.[21]   Therefore, by Order dated March 27, 2025, the Court (1) granted Ms. Yarbrough leave to file an amended complaint and extended Defendants' deadline to answer, but (2) denied Ms. Yarbrough's other applications.[22]   However, Ms. Yarbrough never filed any amended complaint, so the State Defendants, the Honorable Juan Merchan, and District Attorney Alvin Bragg, each moved to dismiss Ms. Yarbrough's operative Complaint. [23]   In response, Ms. Yarbrough filed approximately fourteen additional documents, which the Court broadly construes as her Opposition to Defendants' Motions to Dismiss.[24]

## LEGAL STANDARD

Rule 12(b)(1) requires the court to dismiss a claim for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action."[25]   A plaintiff asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists."[26]   To do so, the plaintiff must allege facts that "affirmatively and plausibly suggest" that they have standing to sue.[27]   The court must "accept as true all material allegations of the complaint[] and construe the

---

[21] *See id.*

[22] *See id.*

[23] *See* Def. Merchan's Mot. to Dismiss, ECF No. 67; Def. Bragg's Mot. to Dismiss, ECF No. 70; State Defs.' Mot. to Dismiss, ECF No. 72.

[24] *See* ECF Nos. 76, 77, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91.

[25] *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.* 790 F.3d 411, 417 (2d Cir. 2015).

[26] *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[27] *Cortlandt*, 790 F.3d at 417 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

complaint in favor of the complaining party."[28]  Where the defendant moves for dismissal under

Rule 12(b)(1) as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge

first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying

defenses and objections become moot and do not need to be determined."[29]

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30]  "In

assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein

as true and drawing all reasonable inferences in the [plaintiff's] favor."[31]  However, a court must

disregard any "conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause

of action.'"[32]

A *pro se* litigant's filings "must be construed liberally to raise the strongest arguments it

suggests."[33]  "This is especially true when dealing with *pro se* complaints alleging civil rights

violations."[34]  Pleadings prepared by *pro se* litigants are held "to less stringent standards than

formal pleadings drafted by lawyers."[35]  A *pro se* party is not required to identify specific laws

---

[28] *Id.* (quoting W.*R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)).

[29] *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

[30] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[31] *Id.* at 106-07.

[32] *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[33] *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

[34] *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002).

[35] *Janczuk v. Fed. Commc'ns Comm'n.*, No. 24 Civ. 2445, 2024 WL 3228521, at *1 (S.D.N.Y. June 26, 2024).

under which they seek relief or claims that they allege, only facts in support of such claims.[36]

Nonetheless, "a *pro se* complaint must state a plausible claim for relief"[37] and "the Court's duty to

liberally construe a [*pro se*] plaintiff's complaint is not the equivalent of a duty to re-write it."[38]

## DISCUSSION

Construed liberally, Ms. Yarbrough's Complaint can be interpreted to raise two sets of

claims.   First, it can be read as asserting claims against "judicial officials" for their alleged

involvement in Ms. Yarbrough's "unlawful[] evict[ion]" under 18 U.S.C. § 242, 18 U.S.C. § 241,

42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986.[39] Second, the Complaint can be read

as asserting various statutory and constitutional claims against Defendants for their alleged

involvement (or lack thereof) in the Trump Criminal Action.  More specifically, Ms. Yarbrough

asserts claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 against all

Defendants, 18 U.S.C. § 242 against Justice Merchan, and 18 U.S.C. § 241 against the State

Defendants and Alvin Bragg.[40]  The Court will address each set of claims in turn.

### I.    Ms. Yarbrough's Eviction-Related Claims

First, the Court considers whether the portion of Ms. Yarbrough's Complaint asserting

various eviction-related claims complies with Rule 8.  Rule 8 requires a complaint to include

enough facts to state a claim for relief "that is plausible on its face."[41]  A claim is facially plausible

---

[36] *See Dingle v. Zon*, 189 F. App'x 8, 10 (2d Cir. 2006).

[37] *Schult*, 717 F.3d at 124.

[38] *Thomas v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 8934, 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016).

[39] Compl. at 5, 7-8.

[40] *See generally*, *id*.

[41] *Twombly*, 550 U.S. at 570.

if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct.[42]  In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true.[43]  But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions.[44]  After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief.[45]

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[46]  "A complaint fails to comply with Rule 8(a)(2) if it is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."[47]  Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," but it does require, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."[48]  "It is not the Court's job – nor the opposing party's – to decipher a complaint that is 'so poorly composed as to be functionally illegible.'"[49]

Here, the named Defendants consist of Attorney General Letitia James, Governor Kathy Hochul, Denis Reo, the Honorable Suzanne J. Adams, the Honorable Juan Merchan, and Alvin

---

[42] *Iqbal*, 556 U.S. at 678.

[43] *Id.*

[44] *Id.* (citing *Twombly*, 550 U.S. at 555).

[45] *Id.* at 679.

[46] Fed. R. Civ. P. 8(a)(2).

[47] *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order).

[48] *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

[49] *Ghosh v. N.Y.C. Hous. Auth.*, No. 21-CV-6139, 2023 WL 3612553, at *6 (S.D.N.Y. Feb. 27, 2023) (quoting *Avramham v. New York*, No. 20-CV-4441, 2020 WL 4001628, at *2 (S.D.N.Y. July 15, 2020)).

Bragg. Yet, it is not clear how, if at all, Ms. Yarbrough's eviction-related claims relate to any of these named Defendants. Rather, Ms. Yarbrough's Complaint alleges that various, unnamed "judicial officials" "refus[ed] to act on [her] legitimate filings" in connection with her alleged "unlawful[] evict[ion],"[50] which she argues, *inter alia*, "demonstrates systemic nonfeasance and a breach of fiduciary duty."[51] However, her Complaint is completely "devoid of any facts" about how the named Defendants allegedly violated her rights, "when and where the events took place, [] what occurred,"[52] or even the form of relief she seeks. Ms. Yarbrough's Complaint "thus fails to comply with Rule 8 because it does not put any of the [named D]efendants on notice of the claims against them."[53]

Therefore, for the reasons discussed above, the Court dismisses Ms. Yarbrough's eviction-

---

[50] The Court takes judicial notice of a different case filed by Yarbrough on June 6, 2023, in the Northern District of New York (the "NDNY Action"). *See Yarbrough v. Broome Cnty.*, No. 23 Civ. 0671, 2024 WL 5135600, at *1 (N.D.N.Y. Dec. 17, 2024); *Liao v. Holder*, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010) ("[A] court may also look to public records, including complaints filed in federal court, in deciding a motion to dismiss.") (quoting *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)). In the NDNY Action, Ms. Yarbrough sued twenty-three defendants—including Broome County, New York, the Town of Barker, New York, and various public and judicial officials, including the Honorable Edward Beecher—alleging, *inter alia*, that Broome County and its officers "unlawfully sold/conveyed [her] private property." *Yarbrough*, 2024 WL 5135600, at *1. Ms. Yarbough also attached, as an exhibit, a warrant from the Town of Barker court, signed by the Honorable Edward Beecher, ordering the Broome Country Sherriff's Department to remove Ms. Yarbrough from the premises. *Yarbrough*, No. 23 Civ. 0671, at ECF No. 1, Ex. 1. It is possible that the eviction-related claims Yarbough asserts in the present matter relate in some way to the eviction-related claims she brought in the NDNY Action. However, none of the defendants named in the NDNY Action, including the Honorable Edward Beecher, are named here. And the Court otherwise declines to construe any of the defendants named in the NDNY as parties to this action. The Court also declines to construe Ms. Yarbrough's Complaint as asserting any claims against these nonparties.

[51] Compl. at 6.

[52] *Figman v. City of New York*, No. 24 Civ. 8898, 2025 WL 1114548, at *3 (S.D.N.Y. Apr. 15, 2025).

[53] *Id.*

9

related claims.

## II.    Ms. Yarbrough's Claims regarding the Trump Criminal Action

The Court next considers whether Ms. Yarbrough has standing to bring her statutory and constitutional claims against the Defendants for their alleged involvement in the Trump Criminal Action.

### A.  Standing

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve [her] grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."[54]   "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing.[55]   At the pleading stage specifically, the plaintiff must clearly allege facts demonstrating each element of standing.[56]   Where a party lacks standing, the court lacks subject matter jurisdiction over their claims.[57]

To establish constitutional standing under Article III, the plaintiff must have "suffered an injury in fact" that is "fairly . . . trace[able] to the challenged action" and "likely . . . [to be] redressed by a favorable decision."[58]   The "ultimate focus" of the Article III standing inquiry is "injury to the party seeking standing."[59]   To satisfy Article III's injury-in-fact requirement, a plaintiff must show "an invasion of a legally protected interest which is 'concrete and

---

[54] *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

[55] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[56] *Id.*

[57] *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020).

[58] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[59] *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999)).

particularized' and 'actual or imminent, not conjectural or hypothetical.'"[60]   Applying that standard here, the Court concludes that Ms. Yarbrough fails to satisfy Article III's injury-in-fact requirement because her alleged injuries are neither concrete nor particularized.

Even though a concrete injury need not be "tangible," Ms. Yarbrough's alleged injuries are not concrete because they are "abstract" and not "de facto."[61]   An injury being widely shared does not, by itself, preclude standing; nonetheless, the alleged harm must still be concrete.[62]   For example, "harm to the common concern for obedience to law" is "not only widely shared, but is also of an abstract and indefinite nature."[63]   As such, "injury to the interest in seeing that the law is obeyed" is not sufficiently "concrete."[64]

Here, Ms. Yarbrough fails to claim any injury beyond her assertion that the Defendants' role in the prosecution and sentencing of President Trump is a violation of the "constitutional protections guaranteed to all citizens," which not only injures President Trump but also injures the public through their "erosion of [] trust in the judiciary and prosecutorial system[s]."[65]   Ms. Yarbrough also requests that this Court "remedy this systemic rebellion and insurrection against The Constitution of the United States of American by all public officials"[66]—in other words, expressing her "interest in seeing that the law is obeyed."[67]   But Ms. Yarbrough's view that some

---

[60] *Lujan*, 504 U.S. at 560.

[61] *See Spokeo*, 578 U.S. at 340.

[62] *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998).

[63] *Id.*

[64] *Id.*

[65] Compl. at 10.

[66] *Id.* at 21.

[67] *Akins*, 524 U.S. at 24.

sort of legal violation has occurred is not sufficient to confer her with standing, as there is "longstanding legal doctrine preventing this Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law."[68] Thus, because Ms. Yarbrough claims a "common concern for obedience to law" or a mere procedural violation, the Court finds that these injuries fall short of satisfying the requirement of a concrete, "de facto," injury.[69]

Yet, even if her alleged injuries were "real, and not abstract," Ms. Yarbrough would still fail to satisfy the requirements of Article III standing because her alleged injury is not "particularized."[70]  For an injury to be particularized, "it must affect the plaintiff in a personal and individual way."[71] Here, Ms. Yarbrough's own allegations refute any claim of a particularized injury; she states that the Defendants have "not only injured President-elect Donald Trump, but likewise ha[ve] injured The People of New York, and We The People as a whole."[72]  Because a plaintiff must assert their own legal rights and interests, the Plaintiff here cannot sue to vindicate the rights of President Trump or those of "The People as a whole."  Ms. Yarbrough fails to allege any injury that is particular to her; rather, her entire claim is based on the allegation that there is a "greater crisis" of the "judiciary and government [] abandon[ing] their foundational principles" and that the "injurious systemic malfeasance does not merely harm individual citizens; it endangers the very fabric of constitutional governance."[73]   These allegations are precisely what the

---

[68] *Carney v. Adams*, 592 U.S. 53, 64 (2020).

[69] *Akins*, 524 U.S. at 24.

[70] *Spokeo, Inc.*, 578 U.S. at 340, 352.

[71] *Id.* at 339.

[72] Compl. at 9.

[73] *Id.* at 25.

particularized requirement was intended to bar: injuries that do not "affect the plaintiff in a personal and individual way."[74]  Indeed, "Article III standing is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests."[75]

Because Ms. Yarbrough has failed to plead a concrete and particularized injury, the Court concludes that she cannot satisfy Article III's injury-in-fact requirement.  As a result, the Court need not address the remaining elements of constitutional standing nor the additional arguments raised in Defendants' Motions.

**CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED** in their entirety.  Furthermore, the Court determines that, even liberally read, the Complaint's substantive flaws cannot be cured by better pleading, and that repleading would be futile. Accordingly, dismissal is **GRANTED WITH PREJUDICE.**[76]

The Clerk of Court is respectfully directed to terminate ECF Nos. 67, 72, and 78 and close the case.

SO ORDERED.

Dated: February 6, 2026
New York, New York

_____
DALE E. HO
United States District Judge

---

[74] *Spokeo, Inc.*, 578 U.S. at 339.

[75] *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013).

[76] *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).